# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER GREER,**<br>    Plaintiff,<br>v.<br><br>**CSX TRANSPORTATION, INC.,**<br>    Defendant. | **Case No. 1:22-cv-1233-CLM** |

## MEMORANDUM OPINION

Christopher Greer suffered hearing loss, balance issues, and a neck injury after CSX Transportation, Inc.'s train blew its horn 30 feet away from him at the railyard where he worked. Greer sued CSX for negligence under the Federal Employers Liability Act ("FELA"), seeking to recover compensatory damages for his injuries. CSX moved for summary judgment, arguing (1) that Greer's treating physicians may not opine that CSX's train horn caused Greer's injury, and (2) without an expert opinion to support causation, Greer's FELA claim must fail. (Docs. 20, 22).

As explained within, the court agrees with CSX that Greer's treating physicians cannot testify about causation but disagrees that the absence of expert testimony dooms Greer's FELA claim. So the court **DENIES** CSX's motion for summary judgment. (Doc. 20).

## BACKGROUND

Christopher Greer worked for CSX as a locomotive engineer. When trains passed through the railyard, Greer had to stand outside to visually inspect the trains for defects or dangerous conditions. CSX provided Greer with earplugs, which Greer regularly wore when he inspected trains.

On February 21, 2020, Greer was working at CSX's railyard in Talladega, Alabama. Greer heard the crew of an approaching train calling signals over the radio. Greer then heard the approaching train's horn,

1

which indicated to him that the train would arrive at the railyard in one to two minutes. Greer realized he did not have any hearing protection, so he tried to get earplugs from the trainmaster's office nearby. But the door was locked. Having no time to get hearing protection elsewhere, Greer went outside into the railyard to visually inspect the train. Greer knew the train would blow its horn for a crossing next to the Talladega yard but did not believe it would blow its horn where he was located.

Greer stood nearly 30 feet away from the train tracks facing the approaching train. Greer says that, as the train was "even with his body," the train blew its horn. Greer says that he violently jerked his head away from the sound and immediately felt pain in his neck and ear. He alleges that he had a ringing sensation in his ear after the train passed that did not improve during his shift. When his shift ended, Greer reported the incident and his alleged injuries to CSX and made an appointment with an ear specialist two days later. Greer testified that, since the incident, he has had pronounced hearing loss and uses hearing aids. He also had neck surgery.

Greer now sues CSX for negligence under the Federal Employers Liability Act ("FELA"). Greer alleges that CSX violated FELA by negligently failing to provide him with a reasonably safe workplace. (Doc. 1). He alleges the train's horn caused hearing loss and tinnitus in his right ear, balance problems, and a neck injury. He claims he is permanently disabled from doing his job as a locomotive engineer because of these injuries.

CSX moves for summary judgment arguing (1) Greer's treating physicians may not testify that the train horn caused Greer's injuries, and (2) Greer's failure to produce expert testimony to support the causation element of his FELA claim requires the claim's dismissal. (Docs. 20, 22).

## LEGAL STANDARD

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and—by pointing to affidavits, or depositions, answers to interrogatories, and admissions on file—designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

## DISCUSSION

CSX only challenges causation in its motion. So this ruling boils down to whether Greer has satisfied the Federal Rules of Civil Procedure relating to expert disclosures and, if not, whether expert testimony is necessary to prove causation.

**I.   Greer's treating physicians failed to satisfy FRCP 26(a)(2)(C)(ii)'s requirements and cannot provide *expert* testimony to support the causation element of Greer's FELA claim.**

Rule 26(a)(2) requires parties to disclose expert witnesses in a certain time and manner. Retained experts or employees of the party whose duties involve regularly giving expert testimony must produce a detailed written report at the time of disclosure. Fed. R. Civ. P.

26(a)(2)(B). For an expert who is not required to produce a written report, often called a non-retained expert, the party's disclosure must state "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). And these disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Even if non-retained expert witnesses are testifying on a specific subject, such as causation, they must only file Rule 26(a)(2)(C) disclosures. *Cedant v. United States*, 75 F.4th 1314, 1326 (11th Cir. 2023).

1. *Greer's disclosure*: In his Expert Witness Disclosure, (doc. 21-5), Greer disclosed just one retained expert: Dr. Robert W. McLeod, an economist, to testify about the calculation of Greer's lost wages. (Doc. 21-5, p. 2). As required by Rule 26(a)(2)(B), Dr. McLeod produced a detailed written report attached to the disclosure. (Doc. 21-5, pp. 8-40).

Greer did not produce any retained expert reports about causation under Rule 26(a)(2)(B). Instead, Greer disclosed non-retained expert witnesses, such as his treating physicians, under Rule 26(a)(2)(C). Again, this part of the rule required Greer to disclose the subject matter of each witness's testimony, *plus* a summary of the facts and opinions the witness would offer at trial. In his Expert Witness Disclosure, Greer outlined the subject matter like this:

> Plaintiff hereby discloses that his treating physicians, therapists, and medical providers, including those specifically listed herein pursuant to FRCP 26(a)(2)(C), may testify regarding the nature and extent of his injuries, **the cause of the injuries for which they have treated Plaintiff**, the permanence of the injuries for which they have treated Plaintiff, the effect of the injuries upon Plaintiff's ability to work and labor, the effect the injuries will have on him in the future, and the need for future medical care and devices. Each medical provider will be qualified based on his/her training and experience in his/her respective field and render expert

4

> testimony regarding the care and treatment provided to Plaintiff, the cause of Plaintiff's injuries and any opinions regarding such care or the condition of Plaintiff, past and future, within the scope of that expertise. The records of all medical providers to date have been produced and/or authorizations to obtain the records have been provided. Plaintiff anticipates the medical providers to testify consistently with the records. As Plaintiff's medical care is ongoing, if additional records are generated or created by the providers, the records will be supplemented pursuant to 26(e)(2) and 26(a)(2)(E). In addition, if Plaintiff is referred to or received care from any additional providers, Plaintiff reserves the right to supplement this disclosure.

(Doc. 21-5, p. 3) (emphasis added). Following this paragraph, Greer individually identified each treating physician that he may call as a witness. For example, he listed Dr. Bruce Morgan, an otolaryngologist, and Dr. L. Clark Simpson, an otologist, who both treated Greer for his hearing loss injuries; Dr. Michael Lunsford, a primary care physician who treated Greer before and after the train horn incident; Dr. Christopher Laganke, a neurologist who treated Greer for balance and cervical issues; Dr. Jason Banks, a neurological surgeon who treated Greer for neck pain and cervical spondylosis and performed surgery on his neck; and Dr. Melanie Gardner, a family medicine physician. (Doc. 21-5, pp. 2-5).

Greer then listed that each physician may render opinions about the nature and extent of his injuries or "may render opinions regarding the care and treatment provided to Plaintiff, **the source and cause of Plaintiff's injuries**, the restrictions – work or otherwise that are appropriate for each condition, the permanence of each condition, and the need for future treatment and/or additional surgical treatment." (Doc. 21-5, pp. 3-6) (emphasis added).[1]

---

[1] After listing each of his treating physicians, Greer also disclosed two categories of unidentified witnesses that may testify as non-retained experts: "Any radiologist who may have interpreted

2. *Compliance with Rule 26(a)(2)(C)*: Because these physicians were initially hired to treat Greer, rather than to testify, Greer must satisfy Rule 26(a)(2)(C)'s requirements for non-retained experts. *See Cedant*, 75 F.4th at 1317. As explained, Rule 26(a)(2)(C) requires a non-retained treating physician to state "the subject matter on which the witness is expected to present evidence" ***and*** "a summary of the facts and opinions to which the witness is expected to testify."

The court emphasizes 'and' because Greer outlined the subject matter on which his treating physicians would testify, satisfying Rule 26(a)(2)(C)(i), but not a summary of each witness's facts and opinions as required by Rule 26(a)(2)(C)(ii). None of Greer's summaries tied an individual physician's testimony to the train horn incident, nor did they specify the opinion an individual witness would provide. So the court agrees with CSX that Greer failed to satisfy the dual requirements of Rule 26(a)(2)(C). *See Brewster v. Dorel Juv. Grp., Inc.*, No. 4:15-CV-2285-VEH, 2017 WL 1317867, at *6 (N.D. Ala. Apr. 10, 2017); *see also Heard v. Town of Camp Hill*, No. 316CV00856WKWGMB, 2017 WL 3622781, at *3 (M.D. Ala. Aug. 23, 2017).

3. *Dr. Morgan's affidavit*: Greer responded to CSX's argument, in part, by attaching an affidavit from Dr. Morgan. But this attachment does not retroactively satisfy Rule 26(a)(2)(C)(ii). The Eleventh Circuit has emphasized that "[c]ompliance with Rule 26 is 'not merely an aspiration' as 'the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise . . . .'" *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (citations omitted).

The court ordered that Greer make his experts available for deposition by May 15 and that all discovery be complete—including expert disclosures and depositions—by June 30, so that the parties would have

---

any film or study performed on Plaintiff and contained in the medical records produced or provided if so required" and "certain employees of Defendant [who] may provide testimony that may be considered expert opinion(s)." (Doc. 21-5, p. 6). Greer failed to satisfy all requirements of FRCP 26(a)(2)(c) for these witnesses, so they may not provide expert testimony at trial.

*all* evidence to support or oppose summary judgment before dispositive motions were filed on July 28:

| Expert Reports | P: April 3, 2023; Deposed by May 15, 2023<br>D: May 1, 2023; Deposed by June 15, 2023 |
|---|---|
| All discovery complete (Written discovery and Depositions, including experts) | June 30, 2023 |
| Status Conference (telephone) | July 11, 2023, at 10:00 am |
| Dispositive Motions | July 28, 2023<br>*Follow Appx II* |

(Doc. 14). Dr. Morgan signed his affidavit on August 15, two months after the deadline for deposing experts and more than a month after the close of all discovery. (Doc. 23-2, p. 3). Greer thus violated Rule 26(a)(2)(D), which requires disclosure of the summary of facts and opinions under Rule 26(a)(2)(C)(ii) "at the times and in the sequence that the court orders."

  Rule 37(c)(1) bars Greer from using expert testimony that was not disclosed as required by Rule 26(a), unless the failure to disclose "was substantially justified or is harmless." The court finds no justification for Greer's failure to timely disclose the summary of facts and opinions as required by the court's scheduling order. And the error was not harmless, as Greer's failure deprived CSX of its chance to depose Dr. Morgan about his expert opinion. So Dr. Morgan cannot give an expert opinion to oppose CSX's summary judgment motion, nor can he offer one at trial.

  4. *Cedant*: After briefing closed, the Eleventh Circuit published *Cedant v. United States*, 75 F.4th 1314 (11th Cir. 2023). In *Cedant*, the district court ruled (a) that treating physicians who were later retained to offer an opinion on causation had to file reports that complied with Rule 26(a)(2)(B), and (b) Cedant's failure to file compliant reports meant that his treating physicians could not offer opinions. The Circuit Court vacated the district court's order, holding that treating physicians who the

Plaintiff later retained to offer expert testimony at trial fall under Rule 26(a)(2)(C)'s rules for non-retained experts, rather than Rule 26(a)(2)(B)'s rule for retained experts. Because the district court applied Rule 26(a)(2)(B)'s stricter requirements for retained expert reports, the Circuit Court remanded for the district court to either address the treating physician's disclosure under Rule 26(a)(2)(C) or to modify the court's disclosure requirements.

*Cedant* does not affect CSX's argument or this court's decision. The error in *Cedant* was treating a treating physician as a retained expert who must file a report under Rule 26(a)(2)(B). The court does not make that error here—nor has CSX asked it to. Rather, the court is conducting the Rule 26(a)(2)(C) analysis that the Circuit Court ordered the *Cedant* district court to perform on remand. And that analysis shows that Greer failed to meet Rule 26(a)(2)(C)'s requirement and this court's scheduling order, so Rule 37(c)(1) precludes use of Dr. Morgan's opinion.

—

In sum, Greer's failure to satisfy Rule 26(a)(2)(C)(ii)'s requirements for any of his treating physicians means that Greer cannot offer their opinions on causation to oppose CSX's Rule 56 motion or to prove his claim at trial. *See* Fed. R. Civ. P. 37(c)(1). That said, each physician may testify at trial as a fact witness in support of causation. For example, a treating physician may testify as a matter of fact about the timing and results of his treatment of Greer. The physician just cannot opine whether the train's horn caused Greer's injuries.

The question now becomes whether the lack of an expert opinion on the cause of Greer's injuries dooms his FELA claim.

## II. Greer does not need expert testimony to prove the causation element of his negligence claim.

Greer claims that CSX's negligence caused his injury. To prevail on a FELA negligence claim, a plaintiff must prove "the traditional common law elements of negligence: duty, breach of that duty, foreseeability, and causation." *CSX Transp., Inc. v. Dansby*, 659 So. 2d 35, 37 (Ala. 1995).

While the elements are traditional, the causation standard is not. FELA holds railroads liable for an employee's "injury or death resulting *in whole or in part* from the negligence" of the railroad, its employees, or its agents. 45 U.S.C. § 51 (emphasis added). Based on Congress' inclusion of the phrase "in whole or in part," the Supreme Court has held that a FELA plaintiff proves causation "if [the railroad's] negligence played a part—*no matter how small*—in bringing about the injury." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 705 (2011) (emphasis added). "[U]nder FELA the fact that the jury could attribute the injury to other causes is irrelevant so long as the jury reasonably could conclude that the employer's negligence played *some* part." *Cephus v. CSX Transp., Inc.*, 771 F. App'x 883, 889 (11th Cir. 2019) (emphasis added) (citing *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)).

1. CSX says that many things could have caused Greer's hearing loss, including Greer's history of exposure to loud music through involvement in his musical band, gun fire, power tools, yard equipment while listening to music through headphones, and a history of head injuries that includes multiple concussions from playing football. (Doc. 22, pp. 8-10). CSX adds that Greer had hearing loss before the train horn incident, dating back to at least 1997. (Doc. 26, p. 2).

CSX argues that to prove that its train horn caused Greer's injuries, rather than any of these other potential sources, Greer must offer expert testimony that links CSX's train to Greer's injury. (Doc. 22, pp. 8-10). And thanks to the court's ruling in Part I, Greer has no expert opinion on causation.

The court agrees that "nothing in FELA alters the accepted fact that unless the connection between the negligence and the injury is a kind that would be obvious to laymen, expert testimony is required." *Whaley v. Norfolk S. Ry. Co.*, No. 4:14-CV-0108-HLM, 2015 WL 11726510, at *7 (N.D. Ga. June 2, 2015) (quoting *Volner v. Union Pac. R.R. Co.*, No. CIV 11-003-JHP, 2011 WL 6056552, at *4 (E.D. Okla. Dec. 6, 2011), *aff'd*, 509 F. App'x 706 (10th Cir. 2013) (internal citations and quotation marks omitted)). Of course, that means "[e]xpert testimony is unnecessary in cases where a layperson can understand what caused the injury. But when there is no obvious origin to an injury, and it has multiple potential etiologies, expert testimony is necessary to establish causation." *Id.* at *7 (citations omitted).

CSX cites several cases in which courts held that a FELA plaintiff needed expert testimony. But those cases involved plaintiffs with cumulative injuries, not tied to a specific incident or event, or plaintiffs with such medically complex injuries that lay persons could not possibly determine causation. *See Volner*, 2011 WL 6056552 (granting summary judgment when the plaintiff claimed he injured his neck but failed to recall a specific event or working condition that caused his injury and failed to present competent expert testimony for the causation element of his FELA claim); *York v. Union Pac. R. Co.*, No. 8:08CV507, 2010 WL 274996 (D. Neb. Jan. 15, 2010) (granting summary judgment for failure to prove medical causation in FELA case in which the plaintiff alleged years of cumulative trauma injuries to his knees and hip while working with locomotives); *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639 (7th Cir. 2010) (affirming summary judgment in FELA case in which the plaintiff worked for the railroad for nearly thirty years and had cumulative trauma injuries to his knee, elbow, back, and neck, but failed to present expert testimony that could specifically tie his work or incidents at work to his specific injuries); *Moody v. Maine Cent. R. Co.*, 823 F.2d 693 (1st Cir. 1987) (affirming summary judgment for failure to prove medical causation in FELA case in which the plaintiff alleged pain from a series of work-related pressures, and not any traumatic accident or event); *Byous v. L.M. Scofield Co.*, No. 3:07-CV-053-JTC, 2009 WL 10664903 (N.D. Ga. Jan. 27,

2009) (granting summary judgment when the plaintiff could not prove that chemical vapors caused Reactive Airway Dysfunction Sydrome without expert testimony); *Sullivan v. Davidson Trucking, Inc.*, No. 2:17-CV-805-RDP, 2020 WL 3545541 (N.D. Ala. June 30, 2020) (granting summary judgment for railroad company in FELA action in which the plaintiff presented no expert testimony about causation after a vehicle collided with a train on the train tracks and the plaintiff train attendant suffered injuries); *Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004) (finding expert testimony required for causation when the plaintiff alleged that toxins emitted from the defendant's vessels caused her cancer).

2. Greer says his case is different because a lay person could understand that a specific train horn incident caused his hearing loss and neck pain. Greer offers evidence that could prove that, before the 2020 train horn incident, he had not experienced pain or ringing in his ears, had not seen a doctor for hearing loss, ear pain, ringing in his ears, dizziness, or balance problems, and he had no noticeable hearing loss. But immediately after the train horn incident, Greer began experiencing pain and ringing in his ears. So Greer says it would be obvious to a lay person that this isolated incident caused his injuries.

Greer cites cases that allowed a jury to determine causation because the court found that a lay person could understand the causal link without expert testimony. *See Ulfik v. Metro-N. Commuter R.R.*, 77 F.3d 54 (2d Cir. 1996) (reversing JMOL for defendants and finding that a jury could find that prolonged exposure to paint caused headaches, nausea, and dizziness without expert testimony in FELA case); *Clements v. Norfolk S. Ry. Co.*, No. 5:11-CV-322 HL, 2013 WL 870104 (M.D. Ga. Mar. 7, 2013) (denying post-trial JMOL in FELA case, finding no expert testimony required when the plaintiff fell off a four-foot high tire and herniated a disk because this event and resulting injury is not beyond the province of an ordinary person); *Williams v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 00 C 2250, 2002 WL 1433724 (N.D. Ill. June 28, 2002) (denying summary judgment in FELA case and finding no expert testimony required when the plaintiff swung a sledgehammer into rotted wood and injured his back

because the injury was "not such an elusive concept"); *Gallick v. Baltimore & O. R. Co.*, 372 U.S. 108 (1963) (finding the jury could find a causal relationship in FELA case without expert testimony between the railroad's negligence and the plaintiff's bug bite infection while on the job in a pool of stagnant water).

3. In short, the parties present warring caselaw, and the Eleventh Circuit hasn't published a FELA opinion on point—*i.e.*, a case that asks whether a lay juror can find that train horns can cause hearing loss and related injuries without expert testimony. But the Second Circuit has. *See Tufariello v. Long Island R. Co.*, 458 F.3d 80 (2d Cir. 2006).

In *Tufariello*, a FELA plaintiff alleged that 25 years of exposure to train horns while working on the railroad caused his hearing loss. The district court granted summary judgment because the plaintiff had no expert testimony to support the causal link. The Second Circuit reversed, finding that expert testimony was unnecessary: "The causal link . . . between hearing loss and repeated exposure to noise so loud that it causes physical pain or ear-ringing is, as we have noted, widely known and, so far as we are aware, not the subject of scientific dispute." *Id.* at 89.

While some courts have identified *Tufariello* as an outlier, *see Myers*, 629 F.3d at 643, the Circuit's point was simple and consistent with the general rule: a lay person doesn't need an expert to understand that train horns are so loud that they can cause hearing loss; so expert testimony is not required to create a jury question in a FELA case.

Greer's case is stronger than Tufariello's because Greer's case arises from a single incident that resulted in prompt complaints of, and treatment for, hearing loss and neck pain. A simple example demonstrates the point. If a 12-year-old child walked up to Greer and blew an air horn in his ear, causing Greer to jerk his head away in pain, common sense would allow a reasonable juror to find that the air horn caused the resulting neck pain and ear ringing. No expert required.

Changing the scenario from an air horn to a train horn doesn't change the logic or outcome. Greer presents evidence that he stood 30 feet from a train when it blew its horn; he jerked his head away in response to the noise; he immediately complained of pain and ringing in his ears; and he saw an ear specialist two days later. An ordinary person viewing these facts in a light most favorable to Greer could find that the train horn caused Greer to jerk his head and to suffer hearing problems—without being told so by an expert. And it's easier to connect Greer's two-day chain of events without an expert than it was for the plaintiff to connect a 25-year chain of events in the Second Circuit's *Tufariello* case.

Finally, that Greer may have suffered some hearing loss before the 2020 train incident does not prevent Greer from proving the train horn injured his hearing under FELA's low causation standard. *See Cephus*, 771 F. App'x at 889 ("[U]nder FELA the fact that the jury could attribute the injury to other causes is irrelevant so long as the jury reasonably could conclude that the employer's negligence played *some* part."). Plus, Greer's pre-existing hearing loss (if any) says nothing about his neck injury, which a reasonable juror could attribute to the train horn incident without the need of expert testimony.

—

In sum, Greer offers enough evidence to allow a reasonable juror exercising ordinary judgment to find that, "in whole or in part," CSX's train horn caused Greer's injuries. 45 U.S.C. § 51. So the court **denies** CSX's motion for summary judgment on the causation element. Because CSX challenges no other element at the summary judgment stage (*e.g.*, duty and breach of duty), Greer may present his negligence claim to a jury, where he must establish each of the requisite elements.

## CONCLUSION

For the reasons stated within, the court **DENIES** CSX's motion for summary judgment. (Doc. 20). The court **SETS** a telephone status conference for **Monday, February 12, 2024 at 1 PM CST** to reschedule pretrial conference and trial dates. Counsel should dial (877) 873-8018 and use access code 6714714 to participate.

**DONE** and **ORDERED** on February 8, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE